All right. Welcome to day two of the West Courtroom sitting. We had to get in, but I think they went down the hall where there was a little more action than in here. You two are definitely better into this situation, so I won't even go through the rules. You know what the rules are, and I'll have no trouble telling you to stay in the mic or be heard. Looks like we have United States v. Stanford with Brie Price and Ms. Shulberg. Good morning, Your Honors. Robin Shulberg on behalf of Daniel Stanford. Mr. Stanford was convicted of a controlled substances conspiracy, a misbranding conspiracy, a money laundering conspiracy, and some substantive money laundering counts. The controlled substances conspiracy was reversed, but on remand, the district court said the mandate did not allow it to resentence him, and the alternative, it imposed the same ten-year sentences before Mr. Stanford appealed. What I would like to focus on today is why Mr. Stanford was entitled to a resentencing and why the district court should have used the fraud guideline to be 1.1 to resentence him on count two. And the second issue is plain error, right? Excuse me? The second issue is governed by the plain error standard of review? No, no, Mr. Stanford raised that issue in his supplemental objections to the PSR, to his sentencing memo and at the hearing. This court's recent decision in United States v. Clark addresses cases in which one count is one of several counts is reversed, and it divides those cases into two categories. One is where the reversed count was sentenced separately and independently, for example, a 924C conviction, and in that case there's no resentencing. The second category is when the reversed count has the sentences interwoven with the sentences on the other counts, and in that case you do get a resentencing. Mr. Stanford's situation falls under the second category because the conviction on count one, the controlled substance of conspiracy, was used as the underlying offense and hence the base guideline for count three, the money laundering conspiracy. It can't be separated out. Now the government argues it doesn't matter that the conviction was reversed because the district court could have used the evidence of the controlled substances conspiracy, I can't say that, for sentencing purposes. In fact, what happened was that the district court ruled that count two, the misbranding conspiracy, was the underlying offense in the count three money laundering, but beyond that, one of the reasons that the district court reversed, that the Fifth Circuit reversed, was that once the district court had decided before trial that knowledge was not an element of the count one controlled substance of conspiracy, Mr. Stanford did not have an adequate opportunity to present evidence that he lacked knowledge that the underlying substance was a controlled substance analog. This lack of knowledge issue carries over to sentencing where 6A1.3 gives the defendant the right to present evidence of a disputed fact, and here Mr. Stanford's not had adequate opportunity at the time of that sentencing to contest it because at the time of that original sentencing, the court had ruled that knowledge was not an element of the offense, and there was a live conviction. So he was entitled to an opportunity to present lack of evidence of knowledge at a resentencing. Another reason that the court said it was precluded from a resentencing was that the Fifth Circuit had affirmed the count three the money laundering count. When did you first raise the objection to the fact that he needed to be resentenced on all of the other counts? That was right at the beginning of the resentencing process where the district judge asked for and about what it saw the issues were in sentencing. At what point did the judge become convinced that you had waived that right by the remarks that you made? I think right at the beginning also. Was there an objection to that? No, and the record is not clear why. May I discuss the concession issue, Your Honor? Sure. I mean, that's what I'm concerned about because you said in response to Judge Owen, I thought you were saying there's no plain error involved in here, yet when I read the briefs, I thought that no one had objected to the conclusion that the district court had reached that you had waived it until much later after sentencing had occurred. What happened on that issue is, first of all, I was the lawyer. I did not concede it. There was no concession. Well, I mean, I guess you would say that now. It's in your self-interest, but we'd look at what you said. I mean, you can tell us now what you meant, but we'd look at what you said. Judge Jolly, Judge Higginson asked me whether my objections to Count 1, the McFadden error, had it required or affected the convictions on Count 3. He said, we know NAPU and the gradient. I thought he said convictions are sentences. No, he didn't. No, he didn't, sir. He said the language is in the briefs. In your McFadden argument, it's very clear in your brief that you limit that to Count 1, but the NAPU-Grady arguments you think would affect all. Is that correct? And that was the question that I was responding to. It's a very big question in criminal law about when you have a money-laundering conviction and a conviction on the underlying offense, whether reversal of the conviction on the underlying offense requires reversal of the money-laundering count. And I gave that a lot of thought. I still think about that. And I said, well, no, in these circumstances, it doesn't. And Judge Higginson, as a former Chief of Appeals for the U.S. Attorney's Office, was focusing on that same issue, and that's what we were discussing. And in fact, I made reference to jury instructions to explain why the money-laundering conviction could stand. But what I'm concerned about is plain error. Whether plain error view applies is what Judge Owens was concerned about. Well, not on that issue, actually. Actually. Not on that particular issue. Actually, and let me just add that the government has not contested that that's what the interchange was about. Now, the next sentence in that footnote said that I had, well, I had the right to waive that, and I did not read that sentence in that footnote, and that was ineffective assistance of counsel. So you could conceivably, I should have read it, and I should have asked for a rehearing. And so you could conceivably just say, you know, you didn't raise this, you didn't Well, when is the first time you objected to the district judge's interpretation of the footnote? I think at the sentencing hearing, but the lawyer did not raise my objection. I don't know why I communicated it to him, but it's not on the record why he didn't raise my explanation. He said, well, new issues arise at sentencing. My point is that that was dictum, first of all, because it doesn't affect any of the analytical holdings of the case. Two, in Bass, the court said, look, yeah, we were wrong. If you reversed on, that wasn't the concession. If you reversed on count one, it would affect the rest of the sentence. And three, it would not conserve, it would waste judicial resources to make, to defer this to ineffective assistance of counsel, because the question of whether it had any effect was not a fenced guideline for count two, an issue that arose for the first time on appeal. So it just, it kind of, you could decide it now, or you could decide, you know, defer it to an ineffective assistance of counsel claim, where I've confessed that I was ineffective. Well, you acknowledged that there was no petition for rehearing, you know, file once you've seen, you know, this difference of view of sort of what was said and what was meant. You know, footnotes there, not really dictum, but having said that, you know, it's in the opinion, it's there, et cetera, et cetera. So the question is, you know, what do we do about the footnote, even if we thought something different, you know, we don't have the powers of panel to overrule another panel, yada, yada, yada. So where does that play into what you're asking us to do? I mean, it's there. I mean, the curative opportunity was, you know, file a petition for rehearing, you know, the panel noted it, and, you know, you could clear it up, clear it up, says, no, that's what we meant, boom, then you're out. But that didn't happen. So it's there, it's part of the case, and, you know, it's an operative piece of, but even if we differ, we don't have the power to say, for now and evermore, to disregard a footnote in a case, you know, written by another panel. So what do we do with it? Well, I'm suggesting you do what they did in Bass, which was that the court said, look, we were wrong when we said that reversing this count doesn't affect the rest of the sentence. You could say we were wrong, the government and counsel, defense counsel agree that this was not, this concession was about the money laundering conviction, not about sentencing. In Bass, they said we were wrong, it did affect the sentence, go back and have resentencing. In this case, we've had an alternative resentence, and I'm asking the court to reach our objections to that resentence rather than just defer this issue to an ineffective assistance of counsel panel. I think that would be a waste of resources. Arguably, there's a conflict in the judgment of the court in the footnote, because we affirmed, we reversed the conviction and sentence on count one of the court dead, affirmed as to all else, and remanded for any further proceedings. And arguably, if the court had actually affirmed the sentence as to all dead accounts, we would not have remanded for further proceedings, because there would have been no need for further proceedings. I see some tension, at least, arguably, between the footnote and the actual judgment. Well, the actual judgment also said that this case is, it is ordered, the judgment of the district court is affirmed in part and reversed in part, and the cause is remanded to the district court on count one, two, four, seven, three. Let me go on to why we think there is an error in the actual resentencing. It's very clear that the first thing you do when you are resentencing is you pick an offense guideline for the offense of conviction. For count two, and you do that by looking at the statutory index, which is two and 2.6. That did not happen in this case. The court, following the recommendation of the PSI, simply chose two and 2.1 as the appropriate offense guideline. In fact, the statutory index lists two guidelines for conviction under 333A2, 21 U.S.C. 33A2, and 2.6. 2B1.1 or 2N2.1, and so the court had to decide which was the most appropriate for the offense conduct charge in the count of conviction, and could not look at anything but the offense conduct charge in the indictment, in the count of conviction, in making that decision. 33A2 turns the offenses at issue from misdemeanors into felonies, and the offense conduct charge based on one of two factors, intent to defraud or mislead, which was the charge in the misbranding conspiracy count two, misbranding with intent to defraud or mislead, or a second conviction. Now, you match up the two factors that make a felony with the two guidelines, and what you get is a 3331 conviction with intent to defraud or mislead matches up with the fraud guideline 2B1.1, and a second conviction matches up with the other alternative under the statutory index 2N2.1. The cases support that conclusion. Arlen in this circuit says, one, you have intent to defraud the government. That's enough to make the misdemeanor into a felony, and when you do have intent to defraud or mislead, that should be sentenced under the fraud guideline. Arlen was decided a while ago. There have been some amendments to the guidelines that make this clearer, I think, but there are also subsequent cases in other states that have been denied that position. I see I only have a few seconds left. I would ask the court. Let me ask you what your few seconds are on the red light. You have as your last item this request about we send it back assigning it to a different judge. What's the essence of that? We've got tons of cases where there's some evident bias, et cetera, et cetera. I hate to say is that a serious argument? I'm not suggesting you would put something that was frivolous. What's the drive on that? Your Honor, coming out of the trial where Mr. Stanford represented himself, there was a requirement from the judge that pervaded the trial to provide his cross-exam, his testimony to the government ahead of time, which is not required by Rule 16. And he, as a solo practitioner, represented himself, had difficulty doing that, and she concluded when the government said that she had not complied, she concluded that he had lost credibility, was deceiving her, was dishonest. That carried over at the first sentencing to believing witnesses who were obvi, who were very clearly impeached. And at the second sentencing, while she purported to be fair, she decided from the beginning that she was going to reimpose the same sentence. I don't think you know all that. You know, I mean, that's serious. What? Because she stated, she stated on the record her impression to Mr. Stanford. She said, well, I mean, he was a lawyer practicing in South Louisiana, and then all of a sudden he becomes a defendant in this drug deal, and he's convicted of that. So it's not a stretch to, you know, to say he was, you know, not a world-class lawyer in that sense. So, I mean, he's convicted of this, having been a lawyer. He's a lawyer representing himself in this trial and all that. But my question to you is, notwithstanding disagreeing with rulings she made, et cetera, what are the core pieces that would push us to reassign the case to another, particularly in this context where we've got this issue about resentencing and so on and so forth. I mean, what's your best case for us doing it? I mean, just answer me fairly straightforwardly if you can. You got a case? The comments that she made about him were before he was convicted, before the jury verdict. Okay, just in two sentences. Why should we assign this or ask for the district chief judge of the district court to reassign the case? Why? Because she was biased. She had a fixed opinion that Mr. Stanford was not trustworthy, and she could not put that aside. That could be a legitimate conclusion in a lot of cases. I don't think that's a ground for reassignment. I think I tried to explain why that was ill-founded. It was based on this, why didn't you produce XYZ to the government, that he was not required. Well, you've made it into a week. I want to give you a fair shot at mentioning it on this side of the clock, because obviously the government will respond to it. It may or may not be something that comes up before. But okay, we got it. Thank you. May it please the court. I'm Camille Domingue. I represent the United States, who's the appellee in this matter. And I will begin by addressing, as counsel did, the mandate issue. And Judge Owen, before I forget, before I sit down and forget, I'd like to begin by addressing your point about the issue with the judgment. When the Court of Appeals reversed or vacated the conviction on count one, the government would have been entitled to retry that count, because that was a reversal or a vacating of the conviction based on trial error. And I addressed this in my brief, the Supreme Court cases, Miller, that's cited in the Fifth Circuit case addressed in my brief. But because this was trial error, it was an instructional error, the government would have been entitled to retry the defendant. So as I say in my brief, basically what the panel did in Stanford one was address all of those sentencing issues with an eye towards three different scenarios. And the first one is the one that actually played out, where the court remands so the government can decide whether it wants to retry the defendant on count one. And in this particular case, the government elected not to retry. It could have. And that was one of the many things the parties discussed at these initial sort of status conferences that counsel referred to in her response to Judge Charlie's question. So that's the first scenario. So the government elects not to retry. The opinion says, we affirm the conviction and the sentences on all other counts. So when that happens... Well, but had you retried it, then you would necessarily, if it was another conviction, you might have had a re-sentencing on everything. Correct. And that's an exception to law of the case. Was this whole issue of the cross-referencing briefed at all in the prior case? Did anybody focus on, if you vacate the sentence and conviction on one, how that affects the sentence as to counts two and three? Was that briefed in the prior appeal? Well, you see, I will address it this way. The government's position was the mandate rule. And that was our briefing. So the government's briefing was the mandate rule, we referred to the concession... In the prior appeal. Oh, the first appeal, no. That wasn't really even on the table. A stray remark, as best I can tell, in a footnote, because that was not in front of the court. Well, if we reverse on one, how does that affect the sentence on this whole issue about cross-referencing and which offense to choose was not briefed, was it, or even considered by the court? The reason it was not, Judge, was, remember, you had a conviction after the first trial. We had a conviction on a drug conspiracy, and then we had a conviction on a misbranding conspiracy and a money laundering conspiracy, and then several substantive money laundering counts. In the first guideline calculation, the first PSR, the court divided the conduct into two groups. I understand all that. I'm just saying that was not briefed. And the reason it wasn't was because for the drug group, the 846 conspiracy, the drug conspiracy, drove the calculation. Misbranding wasn't even relevant. You're right. It was not on anyone's radar the first time. My point was, as an alternative, if we reverse one and that sentence is taken away, how it affects the remaining sentence was not briefed. That's my only point. The court did not have, there was not an alternative to say, and if you reverse this, you also need to re-sentence on two and three, because that really wasn't in front of the court. No, it wasn't, and I would suggest that, you know, we spent a lot of time in the brief talking about the concession, but beyond the concession, the panel was right in its determination that the sentences on the remaining counts are unaffected. And that's because of something the district court spent a lot of time talking about on remand, and that's this rule. It's in the guidelines. The Supreme Court recognized it in Watts. And that is the district court can use acquitted conduct. So the district court's analysis on mandate rule was, you know, this is not Bass. It's not Bass because in Bass, the CCE count was the vacated count, and that was the count that drove the guideline calculation. In this case, before, during, and after Stanford won, the count that drives the guideline calculation is the count three, money laundering conspiracy. Now, it is true that the drug conduct, the drug conspiracy conduct, influences that money laundering conspiracy calculation, but the court can still use that conduct even after it's been vacated. The Supreme Court held in Watts, the court can use it even if defendants acquitted on it. We don't have an acquittal here. Now, and the reason I say it's not just... It's relevant conduct. It is. It's relevant conduct. Absolutely. But is that what the guideline says? Well, the guideline says underlying conduct. The guideline, curiously, doesn't use specified unlawful activity, which is what the statute uses, but that's what it's talking about. And I found, over the weekend, preparing for argument in an unpublished Fifth Circuit case, MATA, M-A-T-A, I'll provide the court with a citation in a 28J letter, where this exact same thing happened. The defendant, in that case, was charged with the money laundering conspiracy and the SUA, which was drug, specified unlawful activity, SUA, which was drug trafficking. He was acquitted on the drug trafficking. And the district court used the drug trafficking as the underlying offense under 2S1.1 because it found that conduct by a preponderance. And, you know, this is something that the guidelines allow. And this court affirmed that over his argument, specific argument, in MATA, an unpublished case. Again, I'll get the court a citation for it. And, you know, that's what the court, the district court did in this case. It said, I find this conduct has been proven by a preponderance. You know, notwithstanding, you know, what happened in Stanford 1, I find that it's been proven by a preponderance. That's ROA 17157, 17167, 17173-74. The district court makes this finding. Counsel argued a few minutes ago that, well, you know, Mr. Stanford was deprived of the opportunity to prove knowledge. On remanded resentencing, he was not deprived of the opportunity to prove knowledge. Look at ROA 17140, 17150, 17, I'm sorry, 17145 and 17150. The district court repeatedly invited him to present evidence on the knowledge issue. And he declined to do so. He could have testified. This is remanded on resentencing. He could have testified. In Stanford 1, he complained that there were phone records that he had discovered after trial and they were exculpatory. He could have used those. He put on no evidence as of knowledge. And as we stand here in Stanford 2, in the second appeal, he's not contesting the district court's factual finding under the preponderance standard that he didn't have knowledge. Now, he's contesting the mandate rule finding. He's contesting a legal determination under the guidelines. He's contesting whether the court could consider the acquitted conduct. All of those are legal determinations. But he's not contesting the factual finding that he had knowledge of the drug conspiracy. And that's an express factual finding that the district court made under the preponderance standard and it's permitted to make that finding. Again, this is, you know, we've been doing this for a long time under the guidelines using, again, even acquitted conduct if the court finds it by a preponderance. The Supreme Court case is wise. Well, I mean, what do you say? I mean, I was trying to pick up what you were saying with not too much success. But what do you say about the argument that seems to be the essence of the disclosure case, whether it was this claim they're making is reviewed under plain error? The specific claim about what the concession meant or didn't mean, is that what you're talking about, Judge? That they had conceded that the sentences were correct in every respect except with respect to count one in the conviction. I mean, was there any need to re-sentence on the others? I mean, effectively, the government, at least the way the district court interpreted it, no. On remand, I can't do that. So what do you say about that? That's our argument below. That's our principal argument. Is that what you've been talking about? That's our principal argument on appeal. It's that the mandate that this court in Stanford 1 says we reverse on count 1, we affirm convictions and sentences on count 2. I understand that. Now. Now. But I'm saying, what do you say, is that correct? I mean, is it under plain error? Is that the sole issue before us? As to whether the district court committed plain error in failing to adhere to the defendant's position? What do you say, Anna? Well, that is the government's first argument, that the district court was correct. The district court principally believed the mandate prohibited re-sentencing. Right. Everything else it did for three hours. Did they object to that? What happened was the district court, as counsel said, had a status conference and said, this is my initial thinking. My initial thinking is, I have nothing else to do, but I want the parties to brief this issue. And the government submitted a brief saying, you're right, Judge, we're done. When we get to the remand hearing, the court notes, and this is ROA 17136, the court notes, the parties were invited to brief the issue of, you know, what do we do? I mean, the court at this point has not taken a position. It's saying, do I have anything further to do? The parties were going to brief on it, so there's no need for an objection at that point. Okay, go ahead. Okay, so the court gives its initial impression. Its initial impression is, I have nothing else to do, but I want you to brief it, you might change my mind. Okay. And I'm paraphrasing, but that you might change my mind. Okay. The government's brief says, mandate rule, we're done. Okay. The defendant does not brief that specific issue, meaning the meaning of the concession, or So they're silent on the question that the district court asked to be briefed. Correct, at that point. Okay. And then we get to the hearing, and at the beginning of the hearing, the judge sort of reviews the posture and says, we have this status conference, and I ask you to brief it. And the defendant filed nothing, and that's ROA 17136. Okay. The defendant filed nothing. And then the judge says, I, the judge, Judge Foote, listened to oral argument, and I agree that the defendant conceded, or defense counsel conceded, that the reversal on count one has no effect on the others, and I think that's the answer to this problem. Okay, and what do the defendants say at that point? Then, and I think this is what counsel conceded a few minutes ago, he doesn't specifically address the concession, and I can't, I don't know why, but he doesn't specifically address the concession. He instead goes on to say, Judge, we don't agree with that. We think, you know, and they talk about the unbundling, you know, their argument based on Bass, and so they do talk about the unbundling under Bass. So they make, you know, in encounter to the court, they make a sort of a resentencing is required argument that's based on this idea that the reversal on count one affects the sentences on all the other counts. So, you know, they do make that argument. Does he specifically explain what the concession meant, or did not mean, no, not that I see in the transcript? And as I note in my brief, and Judge Stewart mentioned it. He did not object to the district court's interpretation of the concession. Not that I, not that I see, Judge, but he did go on to make an argument that the court had the, that the mandate rule did not restrict the court from resentencing, and that argument was based on Bass. But he was not arguing whether he did or did not waive that question in, before the earlier panel. Pardon me, I missed the first part. He didn't, he did, the defendant did not make the argument that the court has misinterpreted it. Not that I see, Judge. And I'll stand corrected by counsel, but that's not how I interpret. I think that. Pardon me, and he did not say, I did not waive it. Nobody said that at that point, is that right? I, I think that's accurate, Judge. I think his argument, and maybe he thought he was making that argument. Okay, okay. I mean, that's a simple question, doesn't require a lot of answers. So that's, that's exactly where we are. At what point did the defendant object and say, I object to your interpretation of the concession, we did not concede. When is the first point they made that clear to the, to the district court? I think the first argument on what the concession meant or didn't mean was in the defendant's opening brief on appeal. And it could be, you know. On this appeal. Yes, on this appeal. And it could be that, because counsel, Ms. Schillerberg, who's the one who allegedly made the alleged concession, did not represent the defendant in the district court on remand, but is representing the defendant again in this second appeal. And it could be that she felt she was in the best position, I don't want to speak for her, to explain what her concession meant or did not mean. But up until that point, nobody else had done it. That, that's my understanding of the district. What is the position of the government as to whether it was in fact a concession and that they have waived the argument that the earlier panel was wrong in its footnote? The argument I make in my brief is that the remedy for misinterpreting the concession was for counsel to file a petition for panel rehearing. And I cite a circuit court. My question is, is your position that they have waived that issue now? And that they have conceded that resentment is not required on the remaining counts? Yes. That is your position? My argument in brief is it was waived. It's in a footnote in my brief. We also argue that beyond the concession, you know, we worry about ineffective assistance of counsel, too. But you've got a habeas matter in the future, so would you rather us rule alternatively or deal with this on habeas? This is why, Judge, we make the alternative argument. The alternative argument is, you know, the concession is what it is or isn't what it isn't. But the panel was right. You know, Judge Higginson asked the question and he wrote the opinion. So he has an idea of what he was asking and what the lawyer said. But beyond the concession, the court was right because of the ability of the court to use acquitted conduct. Well, I mean, I guess in terms of plain error, you would argue that there was no error. Yes. We put it under plain error review and the court made no error. And that ends the case. Because if they made the concession, which the government argues, they made no objection to the district court's interpretation of it. And it's viewed under plain error for the lack of an objection. And the first step is whether there was error. And you say there is no error. Then that ends the case. Well, Judge, you know, I would hate to rely on a concession alone. Because, you know, as you know, the court sometimes will, well, often or never is the court bound by a concession by counsel. So, you know, I could stand up here and concede a certain point or a certain standard of review. And if the court finds or disagrees, it can do what it wants. So I would never stand up here and say. I don't know about that. I mean, the lawyer speaks for the client. Makes concessions all the time. Fails to make objections. And the client is stuck with it. That's true, Your Honor. And the government is stuck with it. It's true. But I guess I just want to make sure the position is clear in response to Judge Owen's point. We also think the panel is right. It's not just an issue of, well, you admitted that and I don't care, you know, what you meant then and what you mean now. You admitted it. We're done. The panel was right. Well, the district court was right. And the district court was right. Yes. That's your argument. Well, the panel was right. The district court was right. And a permanent basis for affirming is even assuming there was no concession, the district court properly re-sentenced. Absolutely. You would much prefer that we not go down the plain air, rude, frankly, because you don't want to be here and stand for three. Right. I mean, putting it rudely, frankly, right? You feel like you've got a strong enough argument on the merits of it. Yes. That dealing with the somewhat tenuousness of, you know, was it error? Was it conceded? We got two different . . . We don't have a lawyer in front of us now that was there and figuring out the footnote and what do we do about it. All that's uncharted area in a criminal case, at least for my eyes. Yes, Judge. That's exactly right. We believe we've got a strong argument on the merits that this is not vast, that the district court was absolutely correct in finding that the, you know, basically the sentences were unchanged because of the court's authority to consider even acquitted conduct as relevant conduct. What was the defense counsel at the re-maneuver? Well, Mr. Stanford, the court allowed sort of this hybrid representation. He made a good bit of the argument himself. I think Marty Stroud was defense counsel, was retained defense counsel, and there was another lawyer, I believe a Mr. Weber, who was also participated. So he was represented by counsel on re-man. For purposes of the sort of colloquy and articulation that we've been focusing on here with the district court, the questions Judge Charlie asked, et cetera, et cetera, who was the principal voice of the defendant in that context? Was it Mr. Stroud at sort of standby, or was it Mr. Stanford dealing with this, or what? No, it was Mr. Stroud, I would say, did most of the talking at the re-sentencing hearing. Mr. Stanford was allowed to argue the very technical sort of guideline argument on the 2N2.1 versus 2B2.1, the cross-reference. Do we use the cross-reference? How do we pick the offense guideline? Mr. Stanford made the technical guideline calculation, because as I said, this was a three-hour sentencing hearing. The district court didn't even believe it was necessary, but Judge Foote is very, very careful. And the last thing I want to say is, this is not a case that warrants reassignment on re-man. Judge Foote was extremely careful. She was very courteous to Mr. Stanford. The impression she made... May I finish up my sentence? Oh, yeah. I'm out of time. You can just put a period behind that one. Okay. Can I ask one question? Yeah, because I'm... Yeah, well, let me do this first. Well, and that was to say, I mean, assuming most of our time has been spent on this mandate rule, the second part about the guideline calculation and all that, I don't know that it was addressed, have we? In my argument? Not really, because we... All right. Well, that's where I am. All right. Madam Clerk, give the government two minutes on the clock so we can deal with that issue. But Judge Owen has a question, but I want to cover that because it was covered in the opening, and we'll give Ms. Schubert two minutes to make sure that we've got all this on the tape. All right. Thank you, Judge. What's your best case for construing the guideline, the language of the guideline provision, when it directs you what to pick, that offense and conduct means you can use acquitted conduct and you can... What do we do with the word offense? Because he was not convicted of the count one. He was only convicted of two and three. What's your best case that you only look to the offense, the relevant conduct to the conviction? Well, I will say... Or you can look at some unacquitted or acquitted conduct. On the... In the guideline. Okay. Specifically, on the 2S1.1 guideline, which is the money-laundering guideline, offense cannot mean offensive conviction under that guideline because the law does not require a defendant ever be convicted on the SUA. That guideline uses the words underlying offense, but we're actually talking about a specified unlawful activity because it says underlying offense from which the laundered funds were generated. That means specified unlawful activity. And the law does not require a defendant ever be convicted on the SUA. In fact, no one has to be convicted on the SUA. The SUA doesn't have to be charged. The funds just have to be derived from an SUA. The defendant only has to know that they're illegal. He doesn't even have to know that they're illegally derived from an SUA. So, my best case on that is MATA, an unpublished case, but it is on all fours where the defendant was acquitted on drug conduct. It was used as the underlying offense conduct. So, Judge, if you want me to touch... I'll touch very briefly on the 2N2.1. And again, this was an alternative calculation. And the judge used, under the alternative calculation, the alternative underlying offense of the misbranding. And, you know, the defendant makes a lot about the fact that the district court didn't follow the instructions that you look at the statutory index. The statutory index gives two options, 2N2.1 and 2B2.1. And the district court basically has to look at the count of conviction, which in this case, because they were doing it under the misbranding, would have been the misbranding conspiracy count, and pick what fits the best, which one addresses the conduct most closely. And the district court found that this was a drug trafficking crime, that this was not a misbranding case. I have read a ton of misbranding cases in the last week. Those are what I call snake oil cases or cases that aren't covered by a schedule. The reason this case is so unusual is that in cases involving a misbranded drug that is on the controlled substance schedule, 2D2.1 is going to drive the calculation, and we never talk about 2N2.1, which is what happened in Stanford 1. So that's why this case arises in such a unique context. This case is not bound by Arlen. Arlen was not about what guideline we use. Arlen was about whether the court of appeals had jurisdiction to review the sentence because was it an upper departure or was it an application of the guidelines? So this case is not governed by Arlen. Thank you for the extra time, Judge. Thank you. All right, Ms. Shulberg. First, let me say that Judge Higginson did not write the first opinion. Judge Smith wrote the opinion. Second, let me just read the interchange between myself and Judge Higginson. Judge Higginson, in your McFadden argument, it's very clear in the brief that you limit that to count one, but the Napu-Brady arguments you would think would affect all. Is that correct? Everything. Shulberg, everything. That's correct. Judge Higginson, McFadden is just count one. Shulberg, yes, on money laundering, the jury was told it could find whatever it wanted criminally derived from anything. Anything. And that was a reference, as my brief states, to the instruction that says it is not necessary to show that the defendant knew exactly what crime generated the funds. So if it was a state law crime, the money laundering conviction could stand without the conspiracy conviction. Only after finishing her answer to Judge Higginson's question did undersigned counsel turn to her sentencing arguments, and that's on the tape, noting that she had merely 17 seconds remaining. That explains that I wasn't very artful. The first time that I raised this misinterpretation of the concession was not in the brief. There were communications that were not on the record, internal communications about this, and I don't feel free to talk about what those communications were because they're not on the record. The question was more driven towards when was the first time on the record or in official proceedings was it raised? That's all we can go with. Correct, correct. And that would become, but it was stated that, well, it's very convenient for me to just say that. The answer is what? In terms of the record brief? In terms of the record, the first time was in my brief. Mr. Stroud, however... The brief for this appeal. For this appeal, correct. Mr. Stroud, however, did try to respond to the concession as he understood it by saying, well, new things can come up later. Were you at the hearing? Oh, no. No, my job was just if Mr. Stroud had questions as he was developing, he could call me. Well, that sounds like a pretty big question to me. I mean, I'm not criticizing you, but it's... It's not on the record. Well, okay. But, I mean, this is a hybrid deal. You know, we've got a guy representing himself part of the time. Then he's got retained counsel. I mean, he had retained counsel. Then he has you on the last appeal. Then it's back to him being, you know, on his own. Mr. Stroud, one of the best defense counsel around. And then, we've got you back on the brief, you know, here. So, we've got all these different pieces in an already complex appeal, you know, arguing about stuff. And I don't really understand why there was a big remand on re-hearing after Stanford-1, why everybody who had some knowledge wasn't present. So that, whatever the issue be, it could be. Or, you know, they've got telephones. Speed dial. Dial in. We've got this issue. What does the concession mean? Be on the phone. So, it's bothersome to me that we get the case in this posture when, you know, that, to me, I mean, right or wrong what the answer is. But we've got this void between the person who purportedly made the concession, you, are not at the hearing where it's all discussed. We've got a lawyer who wasn't in court when you made the statement trying to interpret what a footnote means in the opinion. So, you know, whatever that's worth. That's why I asked the question who was where and so what would we be guessing you know, at this. But, anyway, it is what it is and we'll handle it. What's your best case on the fencing issue? That you cannot use the the controlled substantive behavior and you must only use the fraud guideline as the, as the benchmark. There are Arlen from this circuit and then there are a string of cases cited in the brief and Nasho, Kimball from the 7th circuit, the 11th circuit and I can't remember the name of the um They're all in your brief. They're all in the brief and yes, they're all in the brief and Matt I cut your thought off but I don't take back what I said in terms of that but I do want to give you an opportunity to make a concluding sentence of what you want to leave us with. You've already addressed the question about You've already addressed the question about you know, the change of counsel. Is there anything else that I cut off your thought you want to say before you go back to your seat? Just that the issue of the correct guideline on one on count two the correct offense guideline did not arise until after the um until after the first appeal the government did not object to selection of count two below as the underlying offense for count three and it didn't object to it in its brief for today's oral argument was the first time there was an objection to it. All right. Thank you. Thank you, Ms. Schubert. Thank you, Ms. Domingue for the briefing and argument.